UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,

          v.

MICHAEL CAMPBELL,

          Defendant.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**
17-CR-546-3 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On July 31, 2018, Defendant pleaded guilty to Count 37 of the Indictment in this case, charging him with Conspiracy to Commit Aggravated Identity Theft. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is sentenced to two years of probation with special conditions, restitution in the amount of $44,368.32, and a $100.00 special assessment.

## BACKGROUND

On October 6, 2017, the Government filed a 41-count Indictment against Defendant and co-defendants Hakeem Bamgbala and Afolabi Ajelero, alleging the defendants engaged in a scheme to defraud the Internal Revenue Service ("IRS") by submitting materially false tax returns to the IRS to collect tax refunds. *See generally*, Indictment, ECF No. 1. The Indictment charges Defendant with (1) Conspiracy to Commit Aggravated Identity Theft, in violation of 18 U.S.C. § 371 (Count 37); and (2) Aggravated Identity Theft, in violation of 18 U.S.C. §§ 1028A(a)(1), 1028A(b), and 1028A(c)(5) (Counts 38-41). *Id.*

On July 31, 2018, Defendant pleaded guilty to Count 37, Conspiracy to Commit Aggravated Identity Theft. *See* July 31, 2018 Minute Entry. On November 9, 2018, the Government filed a 43-count Superseding Indictment against Defendant and his co-defendants, charging this Defendant with the same counts as the original Indictment. *See* Superseding Indictment, ECF No. 35.

## DISCUSSION

The Court now hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, No. 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### II. Analysis

#### A. The History and Characteristics of the Defendant and the Nature and Circumstances of the Offense

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

1. Family and Personal Background

Defendant was born on September 27, 1969 in St. Andrew Parish, Jamaica, to Mehmia Campbell and Sylvia Meyers, who married Carlton Joseph Campbell Clarke before Defendant's birth. *See* Presentence Investigation Report ("PSR") ¶ 45, ECF No. 108. Defendant's parents and stepfather are deceased. *Id.* Defendant had one maternal half-sibling with whom he shared a close relationship, who died in a car accident in February 2022 at age 56. PSR ¶ 46. Defendant also has at least 18 paternal half-siblings who all reside in Jamaica. *Id.* Defendant was raised in an upper-income household in Jamaica by his mother and stepfather and spent weekends with his biological father. *Id.* ¶ 47. Defendant described a great childhood, free of financial hardships. *Id.*

In the early 1980s, Defendant maintained a relationship with Donna Marva, with whom he shares a child, Sabrina Campbell, age 37. *Id.* ¶ 48. Both reside in Jamaica. *Id.* From 1991 to 2003, Defendant maintained a relationship with Sofia Dotting, with whom he shares a child, Syndi Campbell, age 26. *Id.* ¶ 49. From 1992 to 2004, Defendant maintained a relationship with Denise Rowe, with whom he shares two children, Michael Campbell, Jr., age 28, and Amar Rowe, age 24. *Id.* ¶ 50. Defendant married Gloria Campbell in 1998, but the couple divorced in 2021. *Id.* ¶ 51. Defendant provides financial support to all of his children, and continues to maintain a strong relationship with them. *Id.* ¶ 52. His children are aware of his conviction and remain supportive of him. *Id.* Defendant is engaged to Luz Thompson, with whom he has maintained a relationship since 2011. *Id.* ¶ 53. Ms. Thompson is aware of Defendant's conviction and remains supportive of him. *Id.*

Defendant immigrated to the United States in 1988 and has lived throughout Brooklyn and Queens. *Id.* ¶ 55. Defendant does not have current lawful status and is subject to removal

3

proceedings, though no ICE detainer is currently lodged against him. *Id.* Defendant has resided with his fiancée and her three children since 2017. *Id.* ¶56.

### 2. Educational and Employment History

Defendant attended Kingston College in Kingston, Jamaica from 1985 to 1987, graduating with an associate degree. *Id.* ¶ 63. Since 2013, Defendant has operated Bayou Cash Buyers, LLC, a real estate company where he buys and sells homes for profit. *Id.* ¶ 65. He is self-employed and currently has no other employees. *Id.* Defendant has worked in real estate since the 2000s, "flipping houses." *Id.* ¶ 66. In 2005, Defendant worked as a consultant and salesperson, selling and marketing skin care products. *Id.* ¶ 67. From 1998 to 2001, Defendant owned Flavor Restaurant and Bakery as well as Twins Café, both located in Queens, New York. *Id.* ¶ 68. In 2001, Defendant closed Twins Café and sold Flavor Restaurant and Bakery. *Id.* From 1998 to 1999, Defendant owned Super Wash Laundromat, and from 1988 to 1997, Defendant worked fixing machinery at Atlantic Paste and Glue in New Jersey. *Id.* ¶ 69.

### 3. Prior Convictions

Defendant has no prior convictions.

### 4. Medical and Mental Health

Defendant reported a history of high blood pressure, high cholesterol, and diabetes. *Id.* ¶ 58. On May 11, 2019, Defendant suffered a heart attack and was treated at South Nassau Communities Hospital in Oceanside, New York. *Id.* ¶ 59. He was subsequently diagnosed with heart failure. *Id.* Defendant reported having three coronary stents placed in his heart and has a dialysis machine in his basement, which he uses five days per week for three hours at a time. *Id.* ¶ 60. He is currently prescribed a series of medications for high blood pressure, chest pain, and

to reduce the risk of stroke and heart attack. *Id.* He reported no history of emotional or mental health issues. *Id.* ¶ 56.

### 5. Substance Abuse

Defendant reported no history of substance or alcohol use. *Id.* ¶ 57.

### 6. Nature and Circumstances of the Offense

Co-defendants Hakeem Bamgbala and Afolabi Ajelero operated Kaybamz, Inc., a tax preparation business. PSR ¶ 5. Between January 2009 and April 2015, Bamgbala and Ajelero obtained the personal identifying information of at least 125 taxpayers they had never met, which they used to prepare and file false forms with the Internal Revenue Service ("IRS") and to print and negotiate refund transfer checks. *Id.* ¶ 6.

From 2005 to 2007, Bamgbala prepared Defendant's personal income tax returns. *Id.* ¶ 13. In 2014, Bamgbala contacted Defendant to ask him to cash tax refund checks on behalf of the unknowing taxpayers. *Id.* ¶ 14. From January 2014 to March 2015, Defendant agreed to deposit the fraudulent tax refund checks into a bank account and to provide Bamgbala with the value of the checks in cash, for which Defendant would be paid 15% of the total check value. *Id.* Defendant and co-conspirator #1 deposited between 15 and 20 fraudulent tax refund checks for Bamgbala into co-conspirator #1's bank account at Chase Bank through an automated teller machine ("ATM"). *Id.* On a later date, co-conspirator #1 would either write checks to Defendant equivalent to the value of the refund checks or make cash withdrawals which she provided to Defendant. *Id.* ¶¶ 14–15.

Defendant was arrested by IRS agents on November 1, 2017. *Id.* ¶ 21.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The instant sentence recognizes the seriousness of the Defendant's offense, which involved the use of the personal identifying information of taxpayers to defraud the United States. The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his offense.

**C. The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to one count of Conspiracy to Commit Aggravated Identity Theft, in violation of 18 U.S.C. § 371. For this offense, Defendant faces a maximum term of imprisonment of five years, and a maximum term of supervised release of three years. 18 U.S.C. § 371; 18 U.S.C. § 3583(b)(2). A term of not less than one nor more than five years of probation may be imposed because the offense constitutes a Class D felony. 18 U.S.C. § 3561(c)(1). If probation is imposed, a fine, restitution, or community service must also be imposed as a condition of probation unless the Court finds that extraordinary circumstances exist that would make such a condition plainly unreasonable. 18 U.S.C. § 3563(a)(2). Defendant also faces a maximum fine of $250,000.00 under 18 U.S.C. § 3571(b). Probation notes Defendant does not appear able to pay a fine. PSR ¶ 74.

## D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" *Id.* § 3553(a)(4)(A).

The applicable guideline for 18 U.S.C. § 371 offenses is U.S.S.G. § 2X1.1(a), which provides that the base offense level is derived from the "base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." As the conspiracy to commit aggravated identity theft was carried out in furtherance of wire fraud, the guideline for wire fraud is applied. The applicable guideline for wire fraud, U.S.S.G. § 2B1.1, provides a base offense level of 6 because the offense carries a statutory maximum term of imprisonment of less than 20 years.

The applicable tax loss in this case is $44,368.32, which results in a loss amount results in a 6-level increase pursuant to U.S.S.G. § 2B1.1(b)(1)(D), because the loss exceeded $40,000.00 but was less than $95,000.00. As the offense involved more than 10 victims, the offense level is increased by a further 2 levels pursuant to U.S.S.G. § 2B1.1(b)(2)(A). Defendant was a minor participant in the instant offense, warranting a mitigating role adjustment. He was directed by Bamgbala to deposit the fraudulent checks, but was unaware of the broader conspiracy and was not involved in producing the false tax documents or filing the fraudulent claims. Defendant was not a minimal participant because he recruited co-conspirator #1 to the scheme and personally profited from his involvement in the offense. Accordingly, a 2-level reduction is applied under U.S.S.G. § 3B1.2(b). Finally, as Defendant has demonstrated

7

acceptance of responsibility for the offense, a 2-level reduction is applied under U.S.S.G. § 3E1.1(a). Defendant's total offense level is therefore 10.

Defendant has no prior convictions, resulting in a criminal history score of zero. According to the sentencing table at U.S.S.G. Chapter 5, Part A, a criminal history score of zero establishes a criminal history category of I.

Based upon a total offense level of 10 and a criminal history category of I, the guideline imprisonment range is 6 months to 12 months. As an alternative, pursuant to U.S.S.G. § 5C1.1(c)(2), the Court may impose a term of imprisonment of one month followed by a term of supervised release with a special condition requiring five months of community confinement or home detention.

Probation recommends a sentence of two years of probation with special conditions and restitution in the amount of $44,718.32. The Government recommends a below-guidelines sentence and restitution in the amount of $44,368.32. Defense counsel recommends a sentence of probation.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5). In this case, the Court recognizes the Government has requested a downward departure from the Guidelines.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). On March 4, 2019, co-defendant Afolabi Ajelero was convicted by a jury of one count of Conspiracy to Commit Aggravated Identity Theft, in

8

violation of 18 U.S.C. § 371, and two counts of Aiding and Assisting in the Preparation of a False Tax Return, in violation of 26 U.S.C. § 7206(2). On August 8, 2022, this Court sentenced Ajelero to 60 months of incarceration followed by two years of supervised release with special conditions and ordered him to pay restitution in the total amount of $48,239.32. For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Pursuant to 18 U.S.C. § 3663A, restitution in the total amount of $44,368.32 shall be ordered in this case.

## CONCLUSION

The Court finds that a sentence of two years of probation with special conditions is appropriate. The Court also imposes restitution in the amount of $44,368.32. *See* Order of Restitution. The Court additionally imposes the $100.00 mandatory special assessment, but does not impose a fine because the Defendant does not have the ability to pay.

This sentence is consistent with and is sufficient but not greater than necessary to accomplish the purposes of § 3553. The Court also expressly adopts the factual findings of the Presentence Investigation Report and any addenda thereto, barring any errors contained therein and to the extent they are not inconsistent with the Court's sentence.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: August 19, 2022
Brooklyn, New York